AO 91 (Rev. 11/11) Criminal Complaint

U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**

FEB 1 4 2019

AT_____ O'CLOCK_____
John M. Domurad, Clerk - Syracuse

# UNITED STATES DISTRICT COURT
### for the
Northern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| **v.** | ) |
| Jesus Manuel LOPEZ MENDEZ, | )   Case No.   5:19-MJ- 73 (DEP) |
| | ) |
| | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of in or about April 2018, through February 11, 2019, in the county of Onondaga in the Northern District of New York the defendant violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1), (b)(1)(A), and 846 | Conspiracy to possess with the intent to distribute and to distribute controlled substances, to wit: one (1) kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance. |

This criminal complaint is based on these facts:
Click here to enter text.

☒   Continued on the attached sheet.

_____
*Complainant's signature*

Anthony Hart, Special Agent DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   February 14, 2019

_____
*Judge's signature*

City and State:   Syracuse, New York

Hon. David E. Peebles, U.S. Magistrate Judge
*Printed name and title*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

**AFFIDAVIT OF DEA SPECIAL AGENT ANTHONY HART**

I, Anthony Hart, having been duly sworn, do hereby state and depose as follows:

## I.      INTRODUCTION

1.      I am a Special Agent with the U.S. Drug Enforcement Administration of the U.S. Department of Justice (DEA) and been so employed since November 1999. I am currently assigned to the DEA Syracuse Resident Office, Syracuse, New York. I have participated in numerous successful investigations into illicit drug distribution networks and have interrogated numerous defendants, informants and others who were sellers, distributors, or users of narcotics and other illicit drugs. Also, I have been involved in the monitoring, intercepting and recording of court-ordered wiretaps, and have participated in numerous search warrants/arrest warrants involving narcotics trafficking. In addition to my above-mentioned experience, I have had the opportunity to speak with and observe other federal and state narcotics officers with regard to the manner in which narcotics are possessed, sold and distributed in the Northern District of New York area. I have participated in hundreds of searches of residences, businesses and vehicles in which controlled substances, drug paraphernalia, currency and records were discovered. My experience as well as conversations with other law enforcement officers, as detailed herein, will serve as the basis for any opinions or conclusions set forth below.

2.      I have personally participated in the investigation of the offenses set forth below and as a result of my participation and my review of past and present reports made by other Special Agents of the DEA, and other state and local law enforcement agencies, I am familiar with the facts

1

and circumstances of this investigation. I have participated in several multi-agency narcotics investigations and have been the lead agent on narcotics investigations where heroin, fentanyl, and fentanyl analogues were predominantly distributed.

3.     I submit this affidavit in support of a criminal complaint charging defendant **Jesus Manuel LOPEZ MENDEZ** with conspiracy to possess with the intent to distribute and to distribute controlled substances, to wit: one (1) kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A) and 846.

4.     During the course of these investigations, I have conducted or participated in surveillance, undercover transactions, execution of search warrants, debriefings of informants and reviews of tape-recorded conversations and narcotics records.

5.     I have personally participated in the investigation of the offenses set forth below, which relate to the trafficking of cocaine. As a result of my participation in the investigation, my conversations with Special Agents of the DEA, agents, officers and investigators of other state and local law enforcement agencies, and my review of past and present reports made by others agents, officers, and investigators, I am fully familiar with the facts and circumstances of this investigation, and the subjects of the investigation. My experience in the investigation of narcotics crimes, as well as my participation in the instant investigation, and conversations with other law enforcement officers, will serve as the basis for any opinions or conclusions set forth below.

## II.     BASIS OF INFORMATION

6.     As this affidavit is being submitted for the limited purpose of providing probable cause to support charging **Jesus Manuel LOPEZ MENDEZ** with conspiracy to possess with the

intent to distribute and to distribute controlled substances, to wit: one (1) kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A) and 846,  I have not included each and every fact known to me concerning this investigation.  I set forth only the facts which I believe are necessary to establish probable cause for the issuing of a criminal complaint.

7.      Since April 2018, members of the New York State Police and the Drug Enforcement Administration (DEA) Task Force have been investigating the heroin trafficking activities of Gavin BALLOG, Yan MORALES, Bryan MORALES, Juan SANTA[1] and others. The investigation to date has included several controlled purchases of heroin, including over fifty-three (53) "bricks[2]" of heroin (2,650 individual glassine baggies) from Yan MORALES, extensive telephone toll analysis, pen registers, physical surveillance operations, monitoring and recording of pole cameras, monitoring of global positioning devices, GPS tracking warrants, narcotics and narcotics proceeds seizures, and, lastly, wire and electronic interceptions of SUBJECT TELEPHONE #1 (predominately utilized by Yan MORALES) and SUBJECT TELEPHONE #2 (predominately utilized by Gavin BALLOG) authorized by the Honorable Glenn T. Suddaby, Chief United States District Judge for the Northern District of New York.

8.      Pursuant to the court orders authorizing electronic and wire interceptions, over 6,800 wiretap calls and text messages have been intercepted between Yan MORALES, Bryan MORALES,

---

[1] BALLOG, Y. MORALES, B. MORALES, and SANTA have been charged separately under case number 5:19-MJ-052 (ATB).
[2] A "brick" of heroin consists of five (5) "bundles," with each "bundle" containing ten (10) individual glassine baggies of heroin. Thus, a "brick" contains fifty (50) individual glassine baggies of heroin.

Gavin BALLOG, Juan SANTA and multiple co-conspirators and drug customers over the SUBJECT
TELEPHONES.

9.     As will be discussed in further detail below, intercepted conversations over the
SUBJECT TELEPHONES corroborate that Gavin BALLOG and Yan MORALES are the Syracuse-
based leaders of this drug organization and are involved in the day to day operations of this criminal
enterprise responsible for the distribution of significant quantities of heroin in the Northern District
of New York.

10.     Since November 2018, agents have been monitoring conversations between Yan
MORALES, Gavin BALLOG and many of their criminal associates. Many of these conversations are
drug related. As a result of those interceptions, investigators have been able to identify BALLOG as
the local heroin source of supply and the leader and organizer overseeing lower level distributors and
couriers. Investigators have learned that BALLOG is extremely cautious and is familiar with many of
the techniques and practices of law enforcement.   Physical surveillance has proven challenging due
to the organization's use of multiple vehicles, counter surveillance by the targets and the usage of
"stash" locations and vehicles to hide narcotics.

11.     As noted above, the investigation into this DTO has utilized both physical
surveillance as well as surveillance via the monitoring of pole cameras installed near residences
and/or locations utilized by members of the conspiracy.

12.     Among the locations surveilled by your affiant and other agents during this
investigation were two (2) "stash locations" (i.e. locations utilized by members of the conspiracy
primarily for the storing and distribution of controlled substances): 806 First North Street, Syracuse,
NY and 137 Sunhill Terrace, Syracuse, NY.

13.     On at least two (2) occasions during this investigation, your affiant and other agents observed a meeting at 137 Sunhill Terrace between Gavin BALLOG and an individual believed to be a heroin/fentanyl source of supply. Your affiant and other agents believe that the source of supply was meeting with BALLOG to re-supply him with a large quantity of heroin and/or fentanyl.

14.     On January 22, 2019, at approximately 5:30 PM, SUBJECT TELEPHONE #2 utilized by BALLOG placed an outgoing call (#1818) to SUBJECT TELEPHONE #1, utilized by Yan MORALES. During the call, BALLOG asked MORALES what brand of heroin stamps he wanted. MORALES ultimately told BALLOG to provide him with a variety of stamped heroin baggies. During the intercepted call, individuals speaking Spanish could be overheard in the background over SUBJECT TELEPHONE #2. Your affiant has been informed by the Spanish interpreters monitoring the intercepted calls over the SUBJECT TELEPHONES that the unknown male (UM) heard speaking Spanish in the background has a distinctive Dominican accent. A transcript of the call follows.[3]

UM:     [Background: That nigga says (unintelligible). It could be right now around these days of the 13, 14, 15] [Speaking Spanish with a Dominican accent]

Female individual known to your affiant:     He outside with [Unintelligible]

GAVIN:     Can you um... Give him the phone real quick? It's important.

Female individual known to your affiant:     [Aside: Woo! The phone!]

YAN:   [Background: What the fuck? Huh?]

Female individual known to your affiant:     The phone!

YAN:     [Background: My phone?]

---

[3] It should be noted that during this telephone call, the GPS tracker installed on BALLOG's Toyota Venza showed that the Venza was at 137 Sunhill Terrace.

Female individual known to your affiant:      Yeah!

YAN:          [Background: Tell him I'm busy!]

Female individual known to your affiant:      Yeah! Well, he says it's important.

[YAN comes to the phone] GAVIN BALLOG to YAN MORALES

YAN:          Yo!

GAVIN:        Yo! What was the one that they...  That you wanted?

YAN:          Say what?

GAVIN:        Like what name you had wanted it?  Remember you was asking me?

[Voices overlap]

YAN:          Damn! I forgot now!

GAVIN:        Was it Drop, Drip, Droop, Drop, or some shit?

YAN:          It was Droop! But, um... That, they're, they already, um, moved from there, now.

GAVIN:        So, which one you want?

YAN:          What's...? Mix it up.

GAVIN:        A'ight.

YAN:          A'ight.

[END OF CONVERSATION]

    15.    At approximately 5:40 PM, surveillance agents responded to the area of Sunhill Terrace. TFO Rivers observed three vehicles parked in the vicinity of 137 Sunhill Terrace including the Toyota Venza and a black SUV.  Three individuals were observed exiting the residence a short time later and entering the three vehicles. The vehicles left in tandem and pulled over on Bellevue Avenue. Surveillance agents continued past the three vehicles so as not to be compromised.  At

6

approximately 5:50 PM, your affiant observed the dark colored (black) SUV parked across the street from 1017 West Onondaga Street. BALLOG was observed meeting with several individuals in the lot across the street.

16.     Following the meeting between BALLOG and his suspected source of supply, law enforcement followed the source of supply as he drove southbound on I-81, eventually conducting a traffic stop of the suspected source's vehicle near Preble, NY. At that time, the suspected source of supply (the driver of the vehicle) provided his identification to the NYSP trooper who conducted the traffic stop. The identification provided was a Dominican Republic driver's license in the name of Jesus Manuel LOPEZ MENDEZ. Following the traffic stop, the defendant was permitted to leave.

17.     On January 29, 2019, your affiant sought and obtained search warrants from United States Magistrate Judge Andrew T. Baxter to search multiple residences and locations utilized by, and affiliated with, members of this drug trafficking organization (DTO), including the "stash locations" mentioned above.

18.     During the evening of January 30, 2019, agents monitoring the pole camera at 137 Sunhill Terrace observed a 2012 Chrysler Town and Country van, NY registration JAY-3716, arrive in front of the residence. Agents observed a male (believed by your affiant to be defendant LOPEZ MENDEZ) and a female exit the van and enter the residence. BALLOG was observed arriving a short time later at 137 Sunhill Terrace.

19.     Agents then observed BALLOG and a female meet with the aforementioned male (believed to be defendant LOPEZ MENDEZ) who at this point had returned to his 2012 Town and Country van. All three individuals then were observed walking into the residence together. A short time later, BALLOG and the male (believed to be defendant LOPEZ MENDEZ) exited the residence

7

and were observed going back into the Town and Country van.

20.     BALLOG was observed by surveillance agents retrieving a large garbage bag from the van that appeared to contain something heavy inside it. Both BALLOG and the male returned to the residence.  Approximately six minutes later, BALLOG and the female with whom he arrived, exited the residence and entered their Toyota Venza and left the area.  BALLOG then drove over to 402 Dudley Street where he was observed, via the pole camera at that residence, carrying a heavy weighted bag into 402 Dudley Street.  BALLOG exited 402 Dudley Street a short time later carrying a different bag and re-entered the Venza and left the area.

21.     On January 31, 2019, the Hispanic male, now easily identified (due to the daylight) by your affiant and other agents as Jesus Manuel LOPEZ-MENDEZ, was observed exiting 137 Sunhill Terrace and entering the 2012 Town and Country van.  Approximately 13 minutes later the defendant exited the van and re-entered the residence.   LOPEZ-MENDEZ and a female, subsequently identified as his wife, were then observed exiting the residence and entering the Town and Country van.  They then left the area.

22.     On February 2, 2019, agents executed the authorized search warrants. Among the items seized by law enforcement during the execution of the search warrants were: approximately 550 "bricks" (27,500 individual baggies) of heroin that field tested positive for the presence of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance (with an approximate net weight of  1,072 grams); over $70,000.00 in drug proceeds; and cutting agents, packaging, scales, and other items utilized in the packaging and distribution of controlled substances.

23.     On the evening of February 11, 2019, your affiant learned that the same Chrysler Town and Country van, referenced above in paragraphs 18-21, was heading northbound from the

8

New York City area towards upstate New York.  Surveillance was established by members of the

DEA Task Force and the New York State Police (NYSP)

24.     At approximately 10:15 PM, the Town and Country van was spotted on Interstate 81

northbound by surveillance agents and observed exiting a short time later off the highway onto Route

80. NYSP K-9 Trooper Knapp observed that the van was traveling 56 miles per hour in 40 mile per

hour zone.  The vehicle was subsequently stopped by NYSP K-9 Trooper Knapp in the area of Route

80 and Canty Hill Road, Town of Otisco, NY.

25.     After conducting the traffic stop of the van for the speeding violation, Trooper Knapp

observed the defendant seated in the front passenger seat of the van and the defendant's wife in the

rear seat.  Trooper Knapp obtained verbal consent to search the van from the male driver (who

identified himself as a cousin of the defendant's wife).  Trooper Knapp then deployed his K-9 for an

exterior, followed by interior, search of the van, at which time the dog alerted to several areas of the

vehicle indicating the presence of narcotics.

26.     Your affiant conducted a brief interview of the defendant during the roadside stop.  The

defendant admitted to your affiant that he had been living in the United States for approximately ten

(10) years and was not a United States citizen and not in the country lawfully.  The defendant was

detained for immigration violations.[4]

27.     A subsequent search of the vehicle pursuant to administrative seizure revealed a

sophisticated electronic "trap" commonly used by narcotics traffickers to hide quantities of drugs,

narcotics, and weapons.  The trap was located on the passenger side floor of the van under the third

row of seating.  Inside the electronic trap, your affiant and other agents recovered four hundred (400)

---

[4] After being transported to the DEA Syracuse Resident Office for questioning, the defendant's

"bricks" (20,000 individual glassine baggies) of suspected heroin. A field test was conducted of the heroin recovered from the trap utilizing the Trunarc electronic field test, which indicated a positive response for the presence of heroin.

## III.   CONCLUSION

28.    I believe the foregoing establishes probable cause to believe that defendant **Jesus Manuel LOPEZ MENDEZ** conspired with others to possess with the intent to distribute and to distribute controlled substances, to wit: one (1) kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A) and 846. I respectfully request that the Court authorize the filing of this complaint so that the defendant may be charged and brought to court for further proceedings in accordance with the law.

Respectfully submitted,

Anthony Hart, Special Agent
Drug Enforcement Administration

Subscribed and sworn to before
me this 14th day of February 2019

Hon. David E. Peebles
United States Magistrate Judge

wife and the driver of the van were released and provided transportation to a local hotel.